PRICE, Judge.
Appellant, Edward Pickering, was struck on the left ear by the wingtip of a small airplane operated by Ralph Livingston and owned by Robert Ferrington. Pickering brought this action against Livingston, Ferrington and Monarch Insurance Company, the liability insurer of Ferrington, for personal injuries and medical expenses allegedly resulting from the negligent operation of the airplane by Livingston.
After trial on the merits plaintiff was awarded a judgment of $350 for pain and suffering and $198 for medical expenses against all three defendants in solido. From this judgment plaintiff appeals, assigning as error that the trial court’s award for general damages is so inade *274 quate as to constitute an abuse of its discretion. Plaintiff also contends the court erred in finding no loss of earnings resulted from the accident and in refusing to include the cost of additional X-rays in the special damage award. Defendants answered the appeal, alleging the trial court erred in finding Livingston to be negligent, and in failing to find plaintiff contributorily negligent.
For the following reasons we amend and affirm the trial court’s judgment. The facts are simple, and, for the most part, undisputed. Ferrington owns and operates a crop dusting service near Wisner, Louisiana. On August 10, 1971, plaintiff drove out to Ferrington’s place of business with a load of poison to be sprayed on his crops. He walked to the edge of a turnaround area, four to six feet in front of the hangar where the planes taxi in and turn around to be loaded. He continued standing in this area talking to several men while a crop dusting plane operated by Livingston landed and taxied up to the turnaround area. Plaintiff, whose back was turned to the approaching plane, was struck when the plane was pivoted by the pilot in preparation for reloading. The tip of the wing struck plaintiff on the left ear, causing him to fall to the ground.
The evidence shows, and the trial court so held, that Livingston stopped or hesitated after arriving at the turn-around area. He saw the group of men standing nearby and proceeded to pivot the plane after seeing several of the men begin to move towards the hangar opening. We think it apparent from the undisputed facts of this case that Livingston was negligent in beginning this maneuver without taking reasonable precautions to make certain it could be made in safety.
We find the evidence to sustain the rejection of the plea of contributory negligence. Pickering testified his back was towards the runway and he did not see or hear the approaching plane. He further testified a truck was passing by on the adjacent road and distracted his attention. This is supported by other testimony. There is testimony by two employees of Ferrington that they shouted a warning for the group of men to get out of the way of the airplane. Pickering denied having heard any such warning. Willie Herron, who was standing next to plaintiff, testified he ducked down on hearing someone shout but was barely about to avoid the wing striking him. Therefore, had any warning been given, the evidence does not show clearly that plaintiff had sufficient time to move to a place of safety. Although it is probable plaintiff heard the engine of the plane while taxiing, it does not necessarily follow that he realized he was in the path of its destination.
Although the amount of $350 for pain and suffering is minimal, we do not think the trial court abused the wide discretion accorded it in fixing awards for general damages under the prevailing jurisprudence. We believe the evidence shows Mr. Pickering was not hurt seriously by the accident and was not in any serious pain for any length of time. After the accident, Pickering was immediately taken to the hospital in Monroe where he was examined by Dr. Fred Sartor. His ear was sutured and X-rays taken of his skull, spine, right elbow and right hip. These X-rays were all negative. The sutures were removed ten days later and the ear was doing fine. In Dr. Sartor’s opinion, his injuries were not severe and his progress was satisfactory. He was last seen by Dr. Sartor on October 11, 1971, still complaining of some discomfort which was evidently rather mild.
After returning home the day of the accident, he went to Sterlington General Hospital where he was examined by his family physician, Dr. Henry Jones. At that time, he had multiple contusions of the legs and arms. He was released 24 hours later and Dr. Jones saw him one week later. Pickering at that time was complaining of pain in his neck and elbow, and Dr. *275 Jones prescribed purinal, which is a little stronger than aspirin. In his opinion, Pickering was not hurt seriously and should have recovered in about three weeks.
The trial court, in rejecting plaintiffs demands for loss of earnings, found that according to his 1971 tax return, Pickering had worked little as an ironworker and it would, therefore, be purely speculative as to whether he would have returned to ironworking had it not been for the accident. We conclude the evidence is sufficient to entitle him to recover lost earnings for the period of his probable disability. Pickering was working as an ironworker up until July 19, 1971, when he was laid off due to a work force reduction. He received a referral slip from his union in the early part of August to return to work, and both he and his wife testified he intended to do so as soon as he got his crops sprayed. The evidence shows this job would have provided at least two to three months further employment. The medical testimony indicates Pickering should have been able to return to such work three weeks after the accident. Although he did not return to this trade after recovery from injuries received in the accident, he is entitled to an award for the three week period he was unable to perform this work. The evidence shows his earning capacity at this trade would have amounted to the sum of $725.
The trial court disallowed the payment to Radiology Associates for X-rays made and ordered by Dr. Sartor in his course of treatment of plaintiff at St. Francis Hospital in Monroe. The court gave as reasons for rejecting this claim that plaintiff had previously been X-rayed in Sterlington General Hospital by Dr. Jones and defendants should not be responsible for the cost of duplicate X-rays, amounting to $50.00.
We are of the opinion the second set of X-rays were an integral part of the diagnostic evaluation and treatment administered by Dr. Sartor and should have been allowed. •
For the foregoing reasons the judgment appealed from is amended to increase the amount awarded from $548.00 to the sum of $1,323.00 and as amended is affirmed.
Costs of this appeal shall be paid by ap-pellee.